# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| *In re* | ) | Chapter 11 |
|  | ) |  |
| NATIONAL TERRAZZO, INC., | ) | Case No. 06 B 11292 |
|  | ) |  |
|  | ) | Hon. Pamela S. Hollis |
| Debtor. | ) |  |

## FINAL ORDER PURSUANT TO 11 U.S.C. §§ 361 AND 363 (I) AUTHORIZING USE OF CASH COLLATERAL AND (II) GRANTING ADEQUATE PROTECTION

Upon the Motion (the "*Motion*") dated September 29, 2006, filed by National Terrazzo, Inc. (the "*Debtor*"), seeking the entry of Interim and Final Orders (each, an "*Order*"), (a) authorizing, pursuant to Section 363(c) of 11 U.S.C. §§ 101 *et seq.* (the "*Bankruptcy Code*"), use of cash and cash equivalents constituting "*Cash Collateral*" (as that term is defined in Section 363(a) of the Bankruptcy Code) in the ordinary course of business and pursuant to the Budget (as defined herein); (b) providing, pursuant to Sections 361 and 363(e) of the Bankruptcy Code, adequate protection to Union National Bank (the "*Lender*"), as senior secured creditor, with respect to any diminution in the value of the Lender's interest in the Collateral (as that term is defined below), for the use of all Cash Collateral, the use, sale or lease of the Collateral (other than the Cash Collateral) and the imposition of the automatic stay pursuant to Section 362 of the Bankruptcy Code; and (c) requesting that a final hearing (the "*Final Hearing*") be scheduled, and this Court having entered an interim Order on the Motion on October 11, 2006; due and sufficient notice of the Motion under the circumstances having been given; and this Court being otherwise fully advised in the premises;

THE DEBTOR AND THE LENDER STIPULATE THAT:

A.    On September 11, 2006 (the *"Petition Date"*), the Debtor filed a voluntary petition for relief with this Court under Chapter 11 of the Bankruptcy Code (the *"Chapter 11 Case"*).  The Debtor is continuing in possession of its property and operating and managing its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or official creditors' committee has been appointed in the Chapter 11 Case.

B.    The Debtor acknowledges and stipulates that, from time to time prior to the Petition Date, the Lender loaned money to or for the benefit of the Debtor, which loans were documented, recorded or evidenced by various agreements, instruments, financing statements and documents, all as may have been amended, modified or restated from time to time (collectively, the *"Prepetition Loan Agreements"*).[1]

C.    The Debtor acknowledges and stipulates that, in accordance with the terms of the Prepetition Loan Agreements, the Debtor is truly and justly indebted to the Lender, without defense, counterclaim or offset of any kind, and that, as of the Petition Date, (i) the Debtor was liable to the Lender in respect of loans made by the Lender to the Debtor pursuant to the Prepetition Loan Agreements in the aggregate principal amount of approximately **$3,526,262.90** (including accrued and unpaid interest and certain fees), and (ii) the Debtor was liable to the Lender for all other amounts due under the Prepetition Loan Agreements, including, without limitation, attorneys' fees, penalties, other out-of-pocket expenses, costs, expenses and indemnities (together, the *"Prepetition Loan Obligations"*).

---

[1]    Capitalized terms not otherwise defined herein shall have the definitions set forth in the Prepetition Loan Agreements.

D.    The Debtor acknowledges and stipulates that under the terms of the Prepetition Loan Agreements and as security for repayment of the Prepetition Loan Obligations, the Debtor granted to the Lender security interests in, and liens upon substantially all of the Debtor's assets, both tangible and intangible, as more fully described in the Prepetition Loan Agreements, which are incorporated herein by reference (collectively, including the Cash Collateral existing as of the Petition Date, the "*Prepetition Collateral*").

E.    The Debtor acknowledges and stipulates that Lender's security interests in and liens on the Prepetition Collateral were properly perfected and are valid and enforceable first priority liens on, and security interests in, the Collateral (defined below); subject only to any liens of the Internal Revenue Service (the "*IRS*") that are adjudicated to be senior to the Lender's liens in the Prepetition Collateral.  The Debtor acknowledges that there are no other liens on the Prepetition Collateral except for (i) the liens and security interests under the Prepetition Loan Agreements; and (ii) any liens of the IRS.  The Debtor represents that (i) the liens on and security interests in the Prepetition Collateral were granted for fair consideration and reasonably equivalent value and were granted contemporaneously with the making of the loans secured thereby; (ii) it is unaware of any action taken by the Lender which would result in the postponement or subordination of the Prepetition Loan Obligations; (iii) the going-concern value of the Prepetition Collateral in which the Lender asserts a valid and perfected security interest exceeds the amount of the Prepetition Loan Obligations; and (iv) the Prepetition Loan Agreements are valid and enforceable and in full force and effect.  The Debtor further acknowledges and stipulates that all of the Debtor's cash on the Petition Date constitutes proceeds of the Prepetition Collateral and, therefore, constitutes Cash Collateral.  The Lender is entitled, pursuant to Sections 361 and 363(c) of the Bankruptcy Code, to adequate protection of

its interest in the Prepetition Collateral, including for the use of the Cash Collateral, the use, sale or lease of the Prepetition Collateral other than the Cash Collateral and the imposition of the automatic stay under Section 362 of the Bankruptcy Code.

F.    The need exists for the Debtor to use Cash Collateral to continue to operate its business and the Debtor has requested authority to do so as specified in the Budget (as defined below) in order to, *inter alia*, pay wages, generally conduct its business affairs so as to avoid immediate and irreparable harm to its estate and the value of its assets, and to afford the Debtor adequate time to negotiate and seek approval for additional cash collateral use, subject to and within the limits imposed by the mutually agreed upon Budget and further subject to the terms and conditions of this Order.

G.    The use of Cash Collateral is necessary to prevent immediate and irreparable harm to the Debtor's estate and this Order provides solely for the use of Cash Collateral for these limited purposes.

H.    The Lender has consented to the Debtor's use of Cash Collateral conditioned upon the express terms and conditions set forth in this Order.

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND, AS APPLICABLE, STIPULATED THAT, EFFECTIVE IMMEDIATELY:**

1.      The Motion is granted, pursuant to the terms and conditions set forth in this Order and any objections thereto that have not previously been withdrawn are overruled. This Order is valid immediately and fully effective upon its entry.

2.      This Court has jurisdiction over the Chapter 11 Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

3.      Subject to the terms and conditions of this Order, the Debtor may use Cash Collateral and shall pay its ordinary and necessary business expenses for the period from September 11, 2006 through and including November 14, 2006 (unless extended by Lender in writing), pursuant to the budget attached hereto and incorporated herein as <u>Exhibit A</u> (the "*Budget*") which has been consented to by the Lenders. The Budget reflects, on a line-item basis, anticipated cash receipts and expenditures on a weekly basis and the Debtor warrants and represents that the Budget includes all reasonable, necessary, and foreseeable expenses to be incurred in the ordinary course of business in connection with the operation of its business for the period set forth in the Budget. In no event shall the Debtor use any Cash Collateral to pay any items except as set forth in the Budget or as may be consented to in writing by the Lender. The Debtor further agrees not to incur any administrative expenses other than as set forth in the Budget without the prior written consent of the Lender or approval by the Bankruptcy Court after notice to the Lender and a hearing; *provided, however*, that the Debtor may pay fees payable pursuant to 28 U.S.C. § 1930(a)(6) (as set forth in the Budget). Not later than the second (2nd)

business day of each week, the Debtor shall provide to the Lender a variance report reflecting, on a line-item basis, the actual cash receipts and disbursements for such prior one (1) week period, the dollar variance and the percentage variance (the "*Variance Percent*") of such actual receipts and disbursements from those reflected in the Budget for the applicable weeks. Such report will also detail all materials purchased by the Debtor during the applicable week with reference to the specific job and vendor purchase order. Any disbursement by the Debtor other than for such expenses set forth in the Budget within the Variance Percent shall constitute an Event of Default under this Order unless the Lender consents to such disbursements in writing; *provided, however,* that the Debtor may make payments up to ten percent (10%) in excess of the total budgeted expense for a single expense category for that week in the Budget so long as actual disbursements for the budgeted expenses do not exceed one hundred and ten percent (110%) of the budgeted total expenses for that category for such week of the Budget (collectively, the "*Allowed Variance*").

4.    The Debtor shall continue its cash management system pursuant to which the Debtor shall direct all collections whether from sales, business activities or otherwise as proceeds from the sale, use or lease of Collateral (as defined below) to its operating account with Lender (the "*Operating Account*") and, subject to the Debtor's right to use the Cash Collateral in accordance with this Order, the Lender will have full domain and control over such Cash Collateral and the cash proceeds of the Collateral (as defined below). Immediately upon entry of this Order, the Debtor shall account to the Lender for all cash, checks, notes, drafts, instruments, acceptances and other property representing cash or other proceeds of the Prepetition Collateral in the Debtor's possession or control. All cash, checks, notes, drafts, instruments, acceptances and other property and interests in property of the Debtor (the "*Cash Proceeds*") currently in the

possession of the Debtor or in any accounts in financial institutions, including any lock box or depository accounts, shall be deemed proceeds of the Prepetition Collateral, except upon a objection filed in accordance with ¶ 27 of this Order that is sustained by this Court on the basis that such property does not represent Cash Proceeds or for Cash Proceeds identified as unencumbered property on <u>Exhibit B</u> hereto. The rights of all parties to Cash Proceeds not listed on the Debtor's Schedules of Assets and Liabilities or otherwise disclosed are expressly preserved for purposes of this ¶ 4. All Cash Proceeds shall be remitted to the Lender in accordance with the terms of this Order.

      5.     The Debtor is hereby required to deliver to the Lender such other financial and other information concerning the business and affairs of the Debtor as the Lender shall reasonably request from time to time, including, without limitation, the financial reports and information provided to the Lender under the Prepetition Loan Agreements. The Debtor will permit the Lender, the Lender's agents and the Lender's consultants (the "*Lender's Consultants*"), full access to examine the respective corporate, financial and operating records, and, at the Debtor's expense, make copies thereof, inspect the assets, properties, operations and affairs of the Debtor, visit any or all of the offices or locations of the Debtor to discuss such matters with its officers, independent auditors (and the Debtor hereby authorizes such independent auditors to discuss such matters with the Lender's Consultants), and the Debtor will cooperate with the Lender's Consultants in all respects.

      6.     The Debtor's right to use Cash Collateral shall commence on the date of the entry of this Order retroactive as of September 11, 2006 and expire on the earlier of (a) the close of business on November 14, 2006 (which date may be extended by Lender in writing), or (b) the occurrence of any event described in paragraph 25 of this Order (the "*Expiration Date*").

In no event shall the Debtor be authorized to use Cash Collateral except strictly in compliance with the terms and conditions of this Order and the Budget.

7.    In providing for the use of Cash Collateral, the Debtor and the Lender stipulate and agree that:

(a)    The Lender has no obligation to provide ongoing financing to the Debtor under the Prepetition Loan Agreements; *provided, however*, that the Lender reserves its rights to pursue any rights and remedies set forth thereunder against the Debtor.  Accordingly, the Debtor's right to use Cash Collateral pursuant to the terms of this Order is wholly dependent upon there being immediately available funds on deposit with Lender;

(b)    Consistent with 11 U.S.C. § 506(b) and in accordance with Paragraph 24 hereof, the Lender may continue to charge to the account of the Debtor and to pay, provisionally, in accordance with the Prepetition Loan Agreements, all fees, expenses and other costs which may arise in the normal course of the Debtor's business during the Chapter 11 Case, with the Replacement Liens (as defined below) to secure such fees, expenses and other costs, provided however that Lender shall pay itself fees, expenses or other costs only upon ten (10) days prior written notice to the Debtor, United States Trustee and any committee of unsecured creditors appointed in this case;

(c)    The Debtor is not aware of and hereby waives any claim, counterclaim, setoff or defense of any kind or nature which would in any way (i) affect the validity, enforceability and non-avoidability of the Prepetition Loan

- 8 -

Obligations, the Prepetition Loan Agreements, or any of the liens and security interests held by the Lender under the Prepetition Loan Agreements (collectively, the *"Prepetition Liens"*), or (ii) reduce or affect the obligations of the Debtor to pay any of the Prepetition Loan Obligations; and

(d)    The Debtor hereby stipulates that: (i) the Prepetition Liens are valid, perfected and unavoidable, (ii) the Lender, as of the Petition Date, has an allowed secured claim in the amount of value of the Prepetition Collateral, and (iii) the Lender and all of its agents, accountants, officers, attorneys, directors, employees and agents shall be and are hereby released from all claims and causes of actions, whether known or unknown, contingent or fixed, liquidated or unliquidated, which claims and causes of actions arose prior to the Petition Date, in accordance with ¶ 27 of this Order.

8.    The Lender's obligations under this Order are conditional upon and subject to the delivery to the Lender, within seven (7) days after the entry of this Order, evidence satisfactory to the Lender that the Collateral is insured for the full replacement value thereof and Lender is named as loss payee and/or as additional insured on all insurance policies.

9.    The Lender is not required to advance to the Debtor any amounts that may be available for lending under the Prepetition Loan Agreements with the Debtor. So long as no defaults exist under this Order, the Lender shall consent to the use by the Debtor of such amounts of Cash Collateral as are deposited in the Operating Account and authorized for use by the Debtor pursuant to the terms and conditions of this Order.

10.   In addition to the existing rights and interests of the Lender in the Prepetition Collateral and for the purpose of attempting to provide adequate protection for the interests of the Lender for any diminution in the value of the Prepetition Collateral, the Lender is hereby granted, as security for the Debtor's use of Prepetition Collateral, and the proceeds thereof, and Cash Collateral, and the proceeds thereof, a valid, perfected and enforceable first-priority security interest (the "*Replacement Liens*") in and upon the Prepetition Collateral, and the proceeds thereof, and Cash Collateral, and the proceeds thereof, and all other real and personal property of the Debtor of any description whatsoever, wherever located and whenever arising or acquired, including, without limitation, all accounts, inventory, instruments, investment property, documents, equipment, fixtures, general intangibles, leases and any and all proceeds and products, whether tangible or intangible, or any of the foregoing, including proceeds of insurance covering any of the foregoing, which Replacement Liens shall be in addition to the security interests of the Lender in the Prepetition Collateral, and the proceeds thereof, and Cash Collateral, and the proceeds thereof, in and to the same extent, validity and order of priority as such security interests existed in the Prepetition Collateral on the Petition Date and to the extent of the value of the Prepetition Collateral on the Petition Date (collectively, all of the collateral described in this paragraph, the "*Collateral*").

11.   The Replacement Liens herein granted to Lender are, and shall be: (i) in addition to all security interests, liens and rights of set-off of the Lender existing on the Petition Date; and (ii) valid, perfected, enforceable and effective as of the date of the entry of this Order without any further action by the Debtor or the Lender and without the necessity of the execution, filing or recordation of any financing statements, security agreements, vehicle lien

applications, filings with the United States Patent and Trademark Office, mortgages or other documents.

12.    The Lender may, in its sole discretion from time to time, file any such financing statements, mortgages, notices of lien or similar instruments, or take any other action to validate or perfect any such security interest, mortgage, or other lien, as the Lender shall deem appropriate in accordance with the terms of this Order and all such documents and instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Order. The Debtor and its officers are hereby directed to furnish the Lender any information requested in connection with any such filings.

13.    A certified copy of this Order, in the discretion of the Lender, may be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby directed to accept such certified copy of this Order for filing or recording.

14.    In addition to the Replacement Liens granted to the Lender pursuant to this Order, the Lender is hereby granted a superpriority administrative claim under Section 507(b) of the Bankruptcy Code (the "*507(b) Claim*") in the full amount allowable under Section 507(b) and the Bankruptcy Code.  Other than as set forth in Paragraph 16 hereof or by operation of Section 726 of the Bankruptcy Code, such 507(b) Claim shall be allowed and have priority in payment over all other costs and expenses, now existing or hereafter arising, of the kind specified in or ordered subject to applicable law.

15.    The administrative priority for the 507(b) Claim granted hereunder shall be subordinate only to (i) fees payable pursuant to 28 U.S.C. § 1930(a)(6); and (ii) the payment of accrued and unpaid professional fees and expenses allowed by this Court (whether incurred

prior to or subsequent to such Event of Default) of attorneys, accountants, financial advisors or

other professionals retained by the Debtor and any statutory committee appointed in the

Chapter 11 Case pursuant to 1103 of the Bankruptcy Code, in an aggregate amount not in excess

of $25,000.00 (the "*Carve-Out*") inclusive of any retainer paid from the Prepetition Collateral to

Debtor's professionals on or before the Petition Date; *provided, however*, that any fees and

expenses incurred or accrued (regardless of whether such fees and expenses have actually been

paid under sections 330, 331 and 503 of the Bankruptcy Code prior to or following an Event of

Default) shall reduce dollar-for-dollar the Carve-Out; and *provided further, however*, that such

fees and expenses are not incurred for services in connection with challenging the claims,

security interest or liens of the Lenders or commencing or prosecuting any claim or cause of

action against the Lender based in whole or in part upon facts or circumstances existing prior to

the Petition Date.  Except with respect to the Carve-Out, no other claim or expense, having a

priority senior to or pari passu with that granted to the Lender in this Order, shall be granted in

this Chapter 11 Case.

16.   As additional adequate protection, the Debtor agrees:

(a)   that the Debtor shall obtain the Lender's prior written consent or obtain a
court order after no less than twenty (20) days' notice if the Debtor
proposes a business program that contemplates liquidation of any of the
Debtor's assets outside the ordinary course of business; and

(b)   **the Lender shall be deemed to have additional security interests and
liens, against (i) all actions to avoid any transfers or payments that
occur after the Petition Date, (ii) any actions to return retainers held
by the Debtor's professionals paid from the Prepetition Collateral,**

(iii) **all actions to avoid transfers of property on which the Lender has a lien or security interest, and (iv) all other actions to avoid a transfer of property or payment by the Debtor under Chapter 5 of the Bankruptcy Code but expressly excluding any actions which may exist against Lender, with each of the foregoing (i) to (iv) qualifying as Replacement Liens granted to the Lender under this Order.**

17.   Unless the Lender has provided its prior written consent, or upon Court order, there shall not be entered in the Chapter 11 Case any order which authorizes any of the following: (a) the obtaining of credit or the incurrence of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the Collateral and/or entitled to priority administrative status which is equal or senior to the Replacement Liens granted to the Lender herein, or (b) the enforcement of any claimed security, mortgage, collateral interest or other lien of any person other than the Lender on all or any portion of the Collateral.

18.   Unless and until the Prepetition Loan Obligations have been repaid in full, the protections afforded to the Lender under this Order shall survive the entry of any order (unless expressly modified in a confirmed reorganization plan) and the Lender's Prepetition Liens and Replacement Liens in the Collateral and the 507(b) Claim shall continue in these proceedings, and the Lender's Prepetition Liens, Replacement Liens and 507(b) Claim rights shall maintain its priority as provided by this Order until the Prepetition Loan Obligations have been repaid in full.  The Prepetition Liens and Replacement Liens and 507(b) Claim granted to the Lender under this Order and the priority thereof, shall be binding on the Debtor and all creditors of the Debtor, subject to paragraph 26 below.

19.   The use of Cash Collateral by the Debtor shall give rise to an obligation of the Debtor to the Lender for repayment of an amount equal to the amount of the Cash Collateral used and shall be secured by the Replacement Liens.

20.   The Lender and the Debtor may make non-material modifications or amendments to the Budget without further order of this Court, and all actions taken pursuant to such modified Budget shall be and hereby are expressly authorized hereunder.  The Lender may consent in writing to extend the Expiration Date without a further hearing or order of this Court. If the Lender determines to do so, written notification of such extension shall be provided to all parties-in-interest.

21.   The rights and obligations of the Debtor and the rights, claims, security interests, liens and priorities of the Lender arising under this Order are in addition to, and not in lieu or substitution of, the rights, obligations, claims, security interests, liens and priorities granted under the Prepetition Loan Agreements.  In the event of any inconsistency between this Order and the Prepetition Loan Agreements, the terms of this Order shall govern and control. This Order is entered without prejudice to the rights of the Lender to seek further adequate protection of its interest in the Cash Collateral and Prepetition Collateral at any time hereafter upon motion and not less than two (2) business days' written notice.

22.   The Debtor, without further motion to or hearing by the Court and without prejudice to any party's rights under Section 506(b) of the Bankruptcy Code, shall provisionally reimburse the Lender promptly for all costs and expenses (including, without limitation, all filing and recording fees, reasonable attorneys' and paralegals' fees and expenses and out-of-pocket audit expenses) incurred by the Lender at any time in connection with or related in any way to the Prepetition Collateral, the Cash Collateral, the Replacement Liens or the 507(b) Claim,

- 14 -

including, without limitation, costs and expenses in connection with: (i) preparation of the Motion, this Order, any other order relating to the Debtor's Cash Collateral use, and related instruments, documents and agreements; (ii) preservation of and protection of the Lender's rights hereunder and thereunder; (iii) collection of all loans by the Lender to the Debtor; (iv) defense of any claim or action asserted or brought any the Lender by any person that arises from or relates to the Prepetition Loan Obligations, this Order, any other order relating to the Debtor's Cash Collateral use, the Lender's claims against the Debtor, or any and all matters in connection therewith; (v) commencement or defense of, or intervention in any proceeding in this case; (vi) the filing of any petition, complaint, answer, motion, or other pleading, or taking of any other action in or with respect to the Collateral; (vii) the protection, collection, lease, sale, taking possession of, or liquidation of any of the Collateral; (viii) any attempt to enforce any security interest in any of the Collateral; or (ix) the receipt of any professional advice with respect to any of the foregoing; *provided, however,* that Lender shall pay itself any fees, expenses or other costs only upon ten (10) days prior written notice to the Debtor, United States Trustee and any committee of unsecured creditors appointed in this case. Said costs and expenses shall constitute postpetition obligations of the Debtor and shall be paid by Lender debiting such amounts when due from the funds in the Operating Account. The disallowance by the Court of any such fees, costs, and expenses shall not affect the Lender's right to collect such amounts from any person or entity other than the Debtor. **In consideration for the Lender's agreement to permit the Debtor's use of Cash Collateral pursuant to this Order for the purpose of preserving or disposing of the Collateral, the Debtor hereby permanently and forever waives any and all rights of the debtor-in-possession, any trustee in the Debtor's bankruptcy case, the Debtor's bankruptcy estate or any other person or entity to recover sums so used from the**

Lender or from the Collateral, whether such rights would arise under Section 506(c) of the Bankruptcy Code or otherwise.

23.    The notice given by the Debtor of the hearing on this Order was given in accordance with Bankruptcy Rule 4001.

24.    The provisions of this Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court, or with the consent of the Lender.  Any stay, modification, reversal or vacation of this Order shall not affect the validity of any obligation of the Debtor to the Lender incurred pursuant to this Order.  Notwithstanding any such stay, modification, reversal or vacation, all use of the Cash Collateral prior to written notice to the Lender of the effective date of any such stay, modification, reversal or vacation, shall be governed in all respects by the provisions hereof and the Lender shall be entitled to all the rights, privileges and benefits.

25.    Notwithstanding anything to the contrary in this Order, the Debtor's authority to use Cash Collateral pursuant to this Order shall terminate immediately and automatically (the "*Termination Date*"), (a) upon the delivery of written notice to the Debtor by the Lender of any breach, default or Event of Default of any terms and provisions of this Order or the Prepetition Loan Agreements, and such breach, default or Event of Default continues without cure for five (5) business days, or (b) without notice of any kind upon (i) the Expiration Date, (ii) the conversion of the Chapter 11 Case to a Chapter 7 case or appointment of a trustee without the consent of the Lender, (iii) the initiation by any person of any lawsuit or adversary proceeding seeking to challenge the validity or priority of (or to subordinate) any of the Lender's liens and security interests on any of the Collateral between now and the Expiration Date, and (iv) the use of Cash Collateral in excess of amounts permitted under this Order, unless agreed to

in writing by the Lender. The automatic stay pursuant to Section 362 of the Bankruptcy Code shall be deemed lifted and modified, after five (5) days notice to the Debtor, the United States Trustee, and the 20 largest unsecured creditors in this case, without further order of this Court, to permit the Lender to exercise any and all of their rights and remedies under the Prepetition Loan Agreements and this Order, thereby permitting the Lender, *inter alia*, to receive and apply collections of the Collateral, to file any financing statements or other instruments and documents, if any, evidencing its security interests in and liens on the Collateral, and to charge any fees and interest as provided herein and in the Prepetition Loan Agreements; *provided, however,* that the obligations and rights of the Lender and Debtor with respect to all transactions which have occurred prior to the Termination Date, including, without limitation, the Lender's security in Collateral and Debtor's right after notice and a hearing to (i) use Cash Collateral, (ii) reinstate, or defend against the lifting of, the automatic stay, or (iii) contest the existence of a default or event of default, shall remain unimpaired and unaffected by any such termination and shall survive such termination; and *provided further, however,* that upon such termination, the Lender and the Debtor shall be deemed to have retained all of their rights and remedies, including, without limitation, those provided pursuant to the Prepetition Loan Agreements, this Order and the Bankruptcy Code, and the Debtor's right after notice and a hearing to (i) request the use of Cash Collateral, (ii) seek to reinstate, or defend against the lifting of, the automatic stay, or (iii) contest the existence of a default or Event of Default.

26.    The terms of this Order shall be binding upon all parties in interest, including without limitation, the Debtor and any statutory committees appointed in the Chapter 11 Case, unless (i) a party in interest other than the Debtor and any Guarantor of the Prepetition Loan Obligations (including any statutory committee appointed in the Chapter 11

Case) has properly filed an adversary proceeding or commenced a contested matter challenging the amount, validity, enforceability, perfection or priority of the Prepetition Loan Obligations or the Lender's liens on the Collateral in respect thereof, or otherwise asserting any claims or causes of action against the Lender relating to the Prepetition Loan Obligations on behalf of the Debtor's estate, no later than the date that is thirty (30) days after the first meeting of creditors pursuant to Section 341 of the Bankruptcy Code, and (ii) the Court subsequently enters a judgment in favor of the plaintiff in any such timely and properly filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is properly commenced as of such date: (x) the Prepetition Loan Obligations shall constitute an allowed first priority secured claim, not subject to subordination and otherwise unavoidable, and (y) for all purposes in the Chapter 11 Case and any subsequent Chapter 7 cases, the Lender's liens on the Collateral shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, subordination or otherwise unavoidable, and the Lender, the Prepetition Loan Obligations and the Lender's liens on the Collateral shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtor's estate, including without limitation, any successor thereto. If any such adversary proceeding or contested matter is properly commenced as of such date, the findings contained in the recital paragraphs of this Order shall nonetheless remain binding on all parties in interest except to the extent that such findings were expressly challenged in such adversary proceeding or contested matter.

27.    The provisions of this Order shall be binding upon and inure to the benefit of the Lender, the Debtor, and their respective successors and assigns (including any trustee hereinafter appointed as a representative of any estate herein or of any estate in any superseding case under the Bankruptcy Code). The Debtor, on behalf of itself and its respective successors

and assigns, hereby releases and discharges the Lender, its agents, officers, directors and employees, from all claims and causes of action arising out of the Lender's relationship with the Debtor prior to the date of this Order; *provided, however,* that this release shall not be binding on any trustee hereinafter appointed in this case or any of the Debtor's creditors that were not provided a copy of the Debtor's Notice of Final Hearing on Use of Cash Collateral, notwithstanding anything contrary in this Order.

28. INTENTIONALLY OMITTED

29. The Lender shall be entitled, pursuant to Section 363(k) of the Bankruptcy Code, to credit bid the full amount of the Prepetition Loan Obligations and any postpetition obligations in connection with any sale of the Collateral.

30. If any or all of the provisions of this Order are hereafter modified, vacated, or stayed by subsequent Order of this or any other Court, such stay, modification or vacation shall not affect the validity of any debt to the Lender incurred pursuant to this Order prior to the effective date of such stay, modification or vacation, or the validity or enforceability of any lien or priority authorized hereby with respect to such debt. Notwithstanding any such stay, modification or vacation, any advances of funds made pursuant to this Order by the Lender prior to the effective date of such stay, modification or vacation, to or for the benefit of the Debtor, shall be governed in all respects by the original provisions of this Order, and the Lender shall be entitled to all the rights, privileges and benefits, including, without limitation, the security interests and priorities granted herein, with respect to such advances.

31. Other than as expressly set forth above, no rights are created hereunder for the benefit of any third party, any creditor (other than the Lender) or any direct, indirect or incidental beneficiary.

32.   The terms and conditions of this Order have been negotiated in good faith and at arm's-length between the Debtor and the Lender and the use of Cash Collateral hereunder shall be deemed credit extended to the Debtor by the Lender in good faith within the meaning of Section 364(e) of the Bankruptcy Code.

33.   No waiver, modification, or amendment of any of the provisions of this Order shall be effective unless set forth in writing, signed by the parties required under the Prepetition Loan Agreements or approved by the Court.

34.   In the event of any irreconcilable inconsistency between this Order and any agreement heretofore or hereafter entered into by the Debtor and the Lender, the terms of this Order shall govern and control.  Nothing in this Order shall impair or otherwise affect the obligations of Anthony C. Lee and Deborah B. Lee, or the rights of the Lender, under the Guarantees or other Prepetition Loan Agreements with respect thereto.

35.   The IRS shall have replacement lien on any post-petition property of the Debtor, including but not limited to inventory, machinery, furniture and fixtures, accounts receivable, contract rights and general intangibles, and the proceeds thereof, to the extent of any diminution in the value of its pre-petition collateral on any secured claim, all without prejudice to the rights granted to the Lender under this order. Any replacement lien granted to the IRS hereunder shall have the same validity, extent and priority as ~~the~~ ~~by~~ any pre-petition lien held by the IRS. The liens granted herein to the IRS shall be valid, perfected and enforceable without any further action by the Debtor or IRS, and without the execution or recordation of any financing statements, security agreements or other documents.

- 20 -

SO ORDERED, ADJUDGED, DECREED, AND STIPULATED THIS ____ DAY OF
OCTOBER, 2006.


_____
UNITED STATES BANKRUPTCY JUDGE

**OCT 2 6 2006**


Order Prepared and Consented to by:

By:_____
Joel A. Schechter (#3122099)
THE LAW OFFICES OF JOEL A. SCHECHTER
53 West Jackson Blvd.
Suite 1025
Chicago, IL 60604
Telephone:   (312) 332-0267
Facsimile:   (312) 939-4714
Attorneys for Debtor

By: _____
Aaron L. Hammer (#6243069)
Joseph B. DiRago (#6282756)
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606
Telephone:   (312) 360-6552
Facsimile:   (312) 360-6571
Attorneys for Lender

## EXHIBIT A

**Budget**

10/05/2006 07:21 FAX 6473533047

NATIONAl TERRAZZ O INC.

MONTHLY EXPENSES

| | 1-Oct | 8-Oct | 15-Oct | 23-Oct | 30-Oct |
|---|---|---|---|---|---|
| CONSTR. WAGES | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 |
| MATERIALS | | 10,000 | 10,000 | 10,000 | 10,000 |
| PAYROLL TAX _ FED | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 |
| PAYROLL - STATE | | 16,000 | | | |
| UNEMPLOYMENT TAX | | 3,000 | | 10,000 | |
| WORK COMP | 14,600 | | | | 14,600 |
| SUPPLIES | | 600 | 600 | 500 | 500 |
| RENT-BUILDING | | 6,000 | | | |
| UNION BENEFITS | 54,000 | 15,000 | 30,000 | 30,000 | |
| INS. BUSINESS | 3,500 | | | | 3,500 |
| TELE- CELL & OFFICE | | 1,350 | | | |
| ELECTRIC | | 200 | | | |
| HEATING | | 700 | | | |
| WATER | | 56 | | | |
| COMP. & OFFICE SUP. | | 250 | | | |
| REPAIRS & MAINT | | | | 660 | |
| POSTAGE & DELIVERY | | 200 | | 195 | |
| TRAVEL EXP | | | 1,750 | | |
| AUTO EXP | | | 1000 | | |
| FREIGHT | | 700 | | 700 | |
| SUB CONTRACTORS | 1000 | | 1000 | | |
| OTHER | | | | 1000 | |
| ADMINISTRATIVE WAGES | 3000 | 2600 | 2500 | 2,500 | 2600 |
| TOTALS | 105,300 | 88,656 | 75,950 | 84,955 | 60,300 |
| RECIEVABLES | 97,975 | 100,260 | 82,842 | 100,930 | 136,174 |
| CASH FLOW | -7,325 | 6277 | 13169 | 38,144 | 116,018 |